**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABDIEL CHIRINOS JIMENEZ,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN ET AL,<br>Respondents. | Case No. 2:26-cv-12302-MAR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**<u>INTRODUCTION</u>**

On October 21, 2026, Petitioner Sabdiel Chirinos Jimenez (A# 220-151-477) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). The clerk issued a Notice of General Order and Briefing Schedule on October 21, 2026, which ordered Respondents to file an Answer to the Petition by October 28, 2026. Dkt. 6. Respondents have not filed an Answer. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 4. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to**

**immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and accompanying declaration. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. Dkt. 7. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Mexico. Pet. at 8. Petitioner entered the United States without inspection in 2013. Id. He is the father of two United States citizen daughters. Id. He has lived in the United States for over a decade. Id. Petitioner's criminal history consists of a single misdemeanor conviction. Id. at 10. Petitioner had two other misdemeanor convictions vacated in 2024. On March 16, 2023, ICE officers arrested Petitioner in Moorpark, California. Id. That day, DHS served Petitioner with a Notice to Appear charging him as inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), and placed him in removal proceedings under section 240 of the INA. Id. On April 13, 2023, after considering the evidence, including Petitioner's convictions which had not yet been vacated, Immigration Judge Bryan E. DePowell granted Petitioner's request for a custody redetermination and ordered him released on a $5,000.00 bond, with alternatives to detention as deemed appropriate by DHS. Id.

Petitioner posted the bond and was released the same day. Id. He was enrolled in the Intensive Supervision Appearance Program ("ISAP"). Id. ISAP required in-office check-ins every fifteen days, monthly home visits, an electronic monitoring device, and use of a reporting application on his phone. Id. For more than three years, Petitioner substantially complied with the conditions of his release. Id. He never

attempted to flee or hide from immigration authorities, and he cooperated with every instruction he was given. Id. On February 27, 2026, the Immigration Judge denied Petitioner's applications for asylum under INA § 208, withholding of removal under INA § 241(b)(3), and protection under Article III of the U.N. Convention Against Torture ("CAT"), and ordered him removed to Mexico. Id. On March 2, 2026, Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). Id. His appeal remains pending, and he does not have a final order of removal. Id. Petitioner attended his scheduled ISAP check-ins in the months before his detention, including at least four check-ins at which no violation or concern was raised. Id. On August 19, 2026, Petitioner's officer asked him to report for his scheduled check-in at 6:00 a.m. instead of 4:00 p.m., and Petitioner appeared at the Chatsworth office as instructed. Id. His ISAP officer and ICE agents were waiting, and Petitioner was taken into custody. Id. The officers indicated only that Petitioner was being detained because of issues with his electronic monitoring device. Id. Petitioner objected that he had complied with all supervision requirements. Id. The officers identified no missed appointment, no violation of any condition of release, no new criminal conduct, and no material change in circumstances. Id.

Before his re-detention, Petitioner received no notice that ICE intended to revoke his release and no hearing before a neutral decisionmaker. Id. On September 14, 2026, Petitioner moved the Immigration Court for a custody redetermination hearing. Id. As of the date of this Petition, no hearing has been scheduled. Id. Petitioner has remained in custody at the Adelanto ICE Processing Center since August 19, 2026. Id. He has been separated from his wife and children, and his family has lost its sole source of income. Id. He suffers from diabetes and an ongoing respiratory condition, and despite repeated requests, he has received no treatment for his respiratory condition while detained. Id.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner claims that his re-detention violates his right to due process under the Fifth Amendment and violates the Administrative Procedure Act. Pet. at 20–21.

Petitioner seeks immediate release from custody on the $5,000.00 bond and conditions of release ordered by the Immigration Judge on April 13, 2023, the return of any personal property and documents seized at the arrest, and a bar on changing his conditions of release without due process. Pet. at 21–22. Petitioner also seeks reasonable attorney's fees. Id.

Respondents failed to present an opposition argument. See Dkt. 7.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process."

(internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such

that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

**V.**

**ANALYSIS**

As an initial matter, it is undisputed that Petitioner has resided in the United States for over a decade. Pet. at 8. It is further undisputed that Petitioner was previously released from immigration custody on bond set by an immigration judge. Id. Petitioner has complied with the conditions of his release. Id. at 10. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on his previous release from custody, the length of time he lived in the United States, and the ties he built to the community over the past thirteen years. Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."); see also Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (same). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). In contrast, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. Martinez Cruz v. Lyons, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases); Pinchi, 792 F. Supp. 3d at 1063.

Furthermore, "[t]here is an unacceptably high risk that the government would

erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." Cruz v. Lyons, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose. Petitioner requested but has not received an individualized bond hearing. Pet. at 11.

Since the initial determination that Petitioner should be released from custody because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner's criminal record reflects fewer criminal convictions than when the immigration judge granted his bond, and he has complied with the conditions of his release. See Pet at 10. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Respondents have identified no such changed circumstances. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. See Garcia v. Noem, No. 25CV3759-LL-BLM, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioner without notice,

reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

Therefore, the Court concludes that Petitioner's arrest on August 19, 2026 without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal.

Feb. 17, 2026).

Given these violations of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v. D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales v. U.S. Immigr. & Customs Enf't, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *7 (C.D. Cal. Apr. 15, 2026) ("join[ing] numerous of its sister courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (similar). As one court in this District has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331).

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

---

1 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because no Immigration Judge has jurisdiction to consider Petitioner's request for custody re-determination. Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees

---

2 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner **Sabdiel Chirinos Jimenez (A# 220-151-477)** ("Petitioner") from custody subject only to conditions of release ordered by the immigration judge on April 13, 2023. Respondents shall return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before a neutral decisionmaker at which the Government bears the burden of proof to show by clear and convincing evidence that there has been a material change in circumstances such that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. **Respondents shall file a notice of compliance within twenty-four hours.**

IT IS SO ORDERED.

DATED: November 12, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE